## McCarthy v. Bainbridge

C.P. of Chester County, no. 92-08969.

*William C. Archbold Jr.,* for plaintiffs.
*Mark T. Riley* and *Joan Orsini-Ford,* for defendants.
*Lise Luborsky,* for Pa. Property and Casualty Insurance Guaranty Assn.

WOOD, *J.,* October 8, 1998—In this matter, I am called upon to decide whether or not a claimant against the Pennsylvania Property and Casualty Insurance Guaranty Association, whose claim arises out of the insolvency of a medical malpractice insurer, must deduct from that claim amounts received from a life insurance company. I conclude that the claimant need not do so.

In 1991, plaintiff's decedent allegedly received improper care at the hands of defendant physicians, and thereafter died. As a result of the death of plaintiff's decedent, his family received $548,000 in life insurance.

In addition, the plaintiff's family brought a wrongful death and survival action against defendants, and the matter was referred to PIC Insurance Group Inc. for defense. On January 19, the parties settled the case for $200,000. On January 21, PIC was declared insolvent, and a liquidator appointed. Under the terms of the relevant statutes, the claim was then assigned to the Pennsylvania Property and Casualty Insurance Guaranty Association, which we have all referred to in short as PIGA.

PIGA exists by the authority of a statute, P.L. 1005, no. 137, adopted December 12, 1994, to become effective in 60 days. This statute was an amendment to earlier statutes, and is set forth in 40 P.S. §991.1801 et seq. 40 P.S. §991.1817 reads as follows:

"Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is a first party or third party claim, and shall include, without limitation, accident and health insurance, workers' compensation, Blue Cross and Blue Shield and all other coverages except for policies of an insolvent insurer. Any amount payable on a covered claim under this Act shall be reduced by the amount of any recovery under any other insurance."

PIGA claims that it is entitled, under the language quoted above, to offset the $584,000 of life insurance which the plaintiff family received against the $200,000, which it now claims, and that therefore no amount is due the family under the settlement which they achieved with PIC.

The statutory authority governing such claims is set forth in 40 P.S. §991.1801 through §1820. This statute replaces prior legislation which PIGA and the defendants appear to acknowledge did not allow a setoff for life insurance. Indeed, their position is that by rewriting section 17 to refer to "any kind of insurance," the legislature intended to include life insurance among the appropriate setoffs. Plaintiffs respond by pointing out that at the time the amendatory statute was adopted, members of our State House of Representatives were assured that the changes in legislation affected other matters, and would *not* "make it more difficult for a

customer to get a refund of his premium or get his claims paid."

The legislation itself, among other things, sets up a Pennsylvania Property and Casualty Insurance Guaranty Association, and requires every "insurer" to join the association. "Insurer" is defined in section 1802 as "[a]ny insurance company, association or exchange which is licensed to write and is engaged in writing within the Commonwealth, on a direct basis, property and casualty insurance policies." The entire statute appears to address the problems concerned with the insolvency of property and casualty insurance companies, and not with the subject of insurance generally.

The Statutory Construction Act, 1 Pa.C.S. §§1921 and 1922, requires that I interpret statutes so as to give effect to the intention of the legislature, and avoid absurd results. I am persuaded from reading the statute and its legislative history that the legislature did not intend for life insurance to be used as an offset against a casualty claim. When section 1817 gives a list of the kinds of insurance that qualify as "any kind of insurance," it is a list of the types of insurance that are used to compensate for casualty loss. In a sense, I suppose life insurance is the ultimate casualty loss, but I see it as different: Everyone dies, but everyone does not have the kind of things happen which give rise to claims under accident and health insurance, workers' compensation, and things of that sort.

Life insurance is a common form of insurance, and surely the legislature would have referred to it by name had they wanted to include it. The legislature did, for instance, in the definitions under section 1802, specifically exclude life insurance from the definition of a "property and casualty insurance policy."

The Statutory Construction Act also tells me that I may not disregard the letter of a statute under pretext of pursuing its spirit. 1 Pa.C.S. §1921(b). However, I am satisfied that a fair reading of the definitions section of the governing legislation and particularly the definitions of "insurer" and "property and casualty insurance policy," make it clear that when the legislature said "any kind of insurance," they meant to say any kind of property or casualty insurance.

## ORDER

And now, October 8, 1998, I will grant the petition to enforce settlement agreement, and direct the respondents to complete the settlement agreement achieved between the parties and PIC Insurance in this case.